FILED

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA** 2017 JUL 24  AM 9:38
**FORT MYERS DIVISION**

CLERK. US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

**UNITED STATES OF AMERICA, EX REL. JOSE ALMANZAR**, an individual,

Plaintiff,

v.

**ALTA HEALTH GROUP, LLC**, a Florida limited liability company, **DR. PAUL HOBAICA**, an individual, and **THOMAS BROWN**, an individual,

Defendants.

**CIVIL ACTION**

**Case No. 2:17-cv-** 419-ftM-38MRM

**Judge:**

**Mag. Judge:**

**FILED *IN CAMERA* AND UNDER SEAL**

---

### COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE QUI TAM PROVISIONS OF THE FEDERAL FALSE CLAIMS ACT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Relator/Plaintiff, **JOSE ALMANZAR** ("**ALMANZAR**" or "Relator"), by and through undersigned counsel, on behalf of the United States of America ("United States") and brings this action against Alta Health Group, LLC ("ALTA"), Dr. Paul Hobaica ("Hobaica") and Thomas Brown ("Brown")(collectively "Defendants"), under the False Claims Act, 31 U.S.C. §3729 et. seq. ("FCA"), and in support of the Complaint, the Relator alleges as follows:

### CAUSES OF ACTION

1.     This is an action to recover damages and civil penalties on behalf of the United States against the Defendants for submitting and causing to be submitted false claims to the United States under the government healthcare program, Medicare and Medicaid ("Program"), from the past six (6) years through present ("Relevant Period").

1

S2

2.     During the Relevant Period, Defendants have fraudulently and systematically billed and/or caused to be billed and, upon information and belief, continues to bill and submit claims and/or cause bills and claims to be submitted to Government Healthcare Programs that are false or fraudulent and/or contain false and fraudulent misrepresentations regarding types and extent of services rendered, the medical necessity of such services and/or up-coding and billing for services never rendered. Defendants have submitted and/or caused to be submitted false claims to receive monies from the Program knowing of the falsity of such claim and the false and fraudulent misrepresentations contained therein.

3.     During the Relevant Period, Defendants fraudulently and systematically reviewed, approved and submitted and/or caused to be submitted billings for services allegedly provided, and upon information and belief, other health services providers, knowing it was unnecessary and contained false and fraudulent misrepresentations.

4.     The Defendants perpetrated these schemes in order to increase billings to and receive revenue from Government Health Care Programs to which they were not entitled.

5.     During the Relevant Period, Defendants have received monies from the Program as a direct and proximate result of its fraudulent claims submitted to the Program and the false and fraudulent misrepresentations contained therein.

6.     Defendants perpetrated this scheme in order to obtain monies from the Program for business and personal profit.

7.     This is also an action brought under the Fair Labor Standards Act (FLSA) for unpaid overtime and under common law. These claims are referred to hereafter as the "Employment Claims."

## JURISDICTION AND VENUE

8.      These claims arise under the Qui Tam provisions of the FCA. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732 which specifically confer jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

9.      Personal jurisdiction and venue for this action are predicated on 31 U.S.C. §3732(a) which provides: "any action brought under §3720 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant, can be found, resides, transacts business or in which any act proscribed by §3729 occurred." Defendant **ALTA** is a Florida corporation that conducts its business in, among other places, Collier County, Florida, which is within the Middle District of Florida, Ft. Myers Division. **DR. HOBAICA** is a physician and principal with **ALTA** and practices in Collier County, Florida. **BROWN** is a principal of **ALTA** and acts as its business manager.

10.     Under §3720(b)(2) of the FCA, this Complaint is to be filed *In Camera* and remain under seal for a period of at least sixty (60) days, and shall not be served on the Defendants until to Court so orders. The Government may elect to intervene and proceed with the Act within sixty (60) days after it receives both the Complaint and the material evidence and information.

11.     This Court has jurisdiction of the Employment Claims under 28 U.S.C. §1331.

12.     This Court has supplemental jurisdiction over **ALMANZAR**'s state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue over the Employment Claims is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in, and the Defendant conducts

3

business in, and some or all of the events giving rise to Plaintiff's claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Collier County is within the Fort Myers Division.

## PARTIES

14.     Relator **ALMANZAR** is a resident of Collier County, Florida. He worked as a Physician's Assistant from November 14, 2014 to May 5, 2017.

15.     Defendant **ALTA** is a Florida corporation formed in 2012 by **DR. HOBAICA** and **BROWN**. **ALTA** provides urgent care in Southwest Florida.

16.     Defendant, **DR. HOBAICA** is a physician and principal with Defendant **ALTA** and is a resident of Collier County, Florida.

17.     Defendant, **BROWN** is a principal with Defendant **ALTA** and is a resident of Collier County, Florida.

18.     During the Relevant Period, Defendants, acting with, through and under the supervision of **DR. HOBAICA** and **BROWN**, fraudulently submitted and/or caused to be submitted claims to receive monies from the Program knowing of the falsity of such claims and the false and fraudulent misrepresentations contained therein.

19.     During the Relevant Period, Defendants, acting with, through and under the supervision of **DR. HOBAICA** and **BROWN**, received monies from the Program by fraudulent means and perpetrated schemes in order to, and did, obtain monies from the Program, distributing the same to Defendants' physicians and to the Defendant as a company despite the fact that such monies were fraudulently obtained.

4

20. The policies and procedures carried out by the Defendants in perpetrating these schemes were carried out by those persons holding the highest corporate levels of Defendant **ALTA**, including **DR. HOBAICA** and **BROWN**.

21. During the Relevant Period, Defendants acted through its principals, officers, agents and employees, including **DR. HOBAICA** and **BROWN**, and the acts of the Defendant **ALTA**'s principals, officers, agents and employees were within the scope of their agency and employment.

22. As a result of his employment with Defendant **ALTA**, Relator has first-hand knowledge and information regarding the business operations and fraudulent claims for Program monies paid by the Government Program.

23. Relator brings this action based on direct and independent knowledge. None of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4). Notwithstanding the same, Relator is an original source for the facts alleged in this Complaint. The facts and circumstances of the Defendants' violations of the FCA have not been publicly disclosed in a criminal, civil, or administrative hearing; nor in any legislative, administrative, or inspector general report, hearing, audit, or investigation, or in the news media. As a result of his employment with Defendant **ALTA**, Relator has first-hand knowledge of the business operations of the Defendants and their intentional and/or reckless disregard and fraudulent conduct in connection with their knowledge, supervision and direction of the illegal and fraudulent practices carried out by the Defendants.

24. Simultaneously with the filing of this Complaint, as required under the FCA, Relator has provided to the Attorney General of the United States and the United States Attorney for the Middle District of Florida a statement of all of the material evidence and information

relating to the Complaint ("Disclosure Statement"). The Disclosure Statement supports the existence of false claims by the Defendants.

**STATUTORY & REGULATORY BACKGROUND**

**A. The False Claims Act**

25.     The FCA imposes liability upon any person who (a) "knowingly presents or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; (b) "knowingly makes, uses, causes to be made or used, a false record or statement material to a false or fraudulent claim," or (c) conspired to defraud the Government by getting a false claims allowed or paid, is liable to the United States for a civil penalty of not less than $5,500.00 and not more than $11,000.00, plus three (3) times the amount of damages which the Government sustains because of the act of that person. 31 U.S.C. §3729(a)(1)(A)-(C), as amended.

26.     The FCA imposes liability not only for the intentionally false or fraudulent conduct, but also where the conduct is merely "in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A)(iii).

27.     The FCA broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property... that... is made to a contractor, grantee or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, if the United States Government- (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse any portion of the money or property requested or demanded." 31 U.S.C. §3729(b)(2)(A).

28.     The Florida False Claims Act (FFCA) has a nearly identical definition of claim, only substituting Florida or any agency thereof for the United States. F.S. §68.082(1)(b).

**B. Government Health Care Programs.**

29.     Medicare is a government financial health insurance program administered by the Social Security Administration of the United States. Medicare was promulgated to provide payment for medical services, durable medical equipment and other related health items for individuals 65 and over. Medicare also makes payment for certain health services provided to additional classes of certain individual healthcare patients pursuant to federal regulations.

30.     Medicare has two parts: Part A, the Basic Plan of Hospital Insurance; and Part B, which covers physicians' services and certain other medical services not covered by Part A. Medicare Part A helps cover inpatient care in hospitals, including critical hospitals, and skilled nursing facilities (not custodial or long-term care). Medicare Part A also helps cover hospice care and some health care. Medicare Part B helps cover physicians' services and outpatient care. It also covers some other medical services that Part A does not cover (i.e. physical and occupational therapist services, etc.). Part B helps pay for covered health services and supplies *when they are medically necessary.*

31.     The federal government enacted the Medicaid program in 1965 as a cooperative undertaking between the federal and state governments to help the states provide healthcare to low income individuals. 42 U.S.C. §§1396-1396v. The Medicaid program pays for services pursuant to plans developed by the states and approved by the U.S. Department of Health and Human Services ("HHS") Secretary through the Center for Medicare and Medicaid Services ("CMS"). States pay doctors, hospitals, pharmacies and other providers and suppliers of medical items and services according to established rates. See 42 U.S.C. §§1396b(a)(1), 1903(a)(1). The federal government then pays each state a statutorily established share of "the total amount

expended... as medical assistance under the State plan..." See 42 U.S.C. §1396b(a)(1). This federal-to-state payment is known as federal financial participation ("FFP").

32.     Much of the daily administration and operation of Medicare is managed through private insurers under contract with the federal government (particularly CMS).

33.     Under Medicare Part B, the federal government contracts with insurance companies and other organizations knows as "carriers" to handle payment for physicians' services in specific geographic areas. These private insurance companies, or "Medicare Carriers," are charged with and responsible for accepting Medicare claims, determining coverage, and making payments from the Medicare Trust Fund.

34.     The Principal function of both intermediaries and carriers is to make and audit payments for Medicare services to assure that federal funds are spent properly.

35.     To participate in Medicare, providers must assure that their services are provided economically and only when, and to the extent, they are medically necessary. Medicare will only reimburse costs for medical services that are needed for the prevention, diagnosis, or treatment of a specific illness or injury.

## DEFENDANTS' FRAUDULENT SCHEMES & SUBMISSION OF FALSE CLAIMS

36.     **DR. HOBAICA** is a board certified physician with **ALTA** who practices in Naples, Florida.

37.     **ALTA** employs physician's assistants, nurse practitioners, medical assistants, practice administrators and an array of support staff.

38.     **ALMANZAR** was hired by **ALTA** in September 2014 as a Physician's Assistant (PA).

39.     Based upon his unique position as a PA, **ALMANZAR** was able to, and did, observe the Defendants submission of false claims to the government.

40.     Specifically, during the Relevant Period, **DR. HOBAICA** rarely (if ever) was present to perform any services or oversight at **ALTA**.

41.     Instead, all services were actually performed by PAs, nurse practitioners or medical assistant. However, **ALTA** represented to the Government that all such services were performed by **DR. HOBAICA** when they were not. **ALTA** did this in order to receive about 20% more reimbursement in Program monies that it was not entitled to.

42.     With knowledge of their impropriety and false claims, the Defendants nevertheless submitted bills to Medicare and Medicaid and received Program monies despite the fact that **DR. HOBAICA** did not perform nearly any of the services for which **ALTA** billed. This was done with the specific purpose of submitting false and fraudulent claims to collect 20% more Program monies.

## EMPLOYMENT CLAIMS ALLEGATIONS

43.     This is also an action brought under the federal Fair Labor Standards Act ("FLSA") and common law for (1) unpaid overtime, (2) retaliation, (3) breach of contract, and (4) promissory estoppel.

44.     The Plaintiff, **ALMANZAR** is an individual and a resident of Florida who at all material times resided in Collier County, Florida and at all times had enterprise and individual coverage under the FLSA during his employment with the Defendants. At all material times, **ALMANZAR** was employed by the Defendants as a physician's assistant. **ALMANZAR** is trained to examine patients, diagnose injuries and illnesses, and provide treatment, take medical histories, examine and treat patients, order and interpret laboratory tests and X-rays, make

diagnoses, and prescribe medications. **ALMANZAR**'s duties consisted of providing service to the medical profession and any work he performs as a PA must be performed under the direct supervision of a physician. A great number of **ALMANZAR**'s patients were residents of other states who visit Southwest Florida on only a seasonal basis or on vacation. **ALMANZAR** began the flow of interstate commerce for **ALTA** by, *inter alia*, generating patient charts for interstate billing, which collected funds from out-of-state sources, including federal funds from Medicare. **ALMANZAR** performed work in Collier County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **ALMANZAR** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

45.     The Defendant, **ALTA** is a Florida corporation and is a covered enterprise under the FLSA (29 U.S.C. §203(d), (r) and (s)). **ALTA** consists of two professional offices and has gross annual sales well in excess of $500,000.00 per year and is engaged in interstate commerce. **ALTA**'s employees are engaged in interstate commerce and their business model specifically caters to persons traveling interstate. **ALTA** collects monies all kinds of insurance, most of which is from out-of-state sources, including the receipt of federal monies from Medicare reimbursement. **ALTA** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **ALMANZAR**. **ALTA** supervised and controlled **ALMANZAR**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **ALMANZAR**. **ALTA** maintains employment records of **ALMANZAR**. **ALTA** was the employer of **ALMANZAR**.

46.     Defendant, **DR. HOBAICA** is an individual and is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **DR. HOBAICA** had the authority to hire, fire, assign

work, withhold work and affect the terms and conditions of persons like **ALMANZAR. DR. HOBAICA** supervised and controlled **ALMANZAR**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **ALMANZAR. DR. HOBAICA** maintains employment records of **ALMANZAR. DR. HOBAICA** was the employer of **ALMANZAR.**

47.     Defendant, **BROWN** is an individual and is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **BROWN** had the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **ALMANZAR. BROWN** supervised and controlled **ALMANZAR**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **ALMANZAR. BROWN** maintains employment records of **ALMANZAR. BROWN** was the employer of **ALMANZAR.**[1]

48.     This Court has jurisdiction of this matter under 28 U.S.C. §1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act (FLSA") 29 U.S.C. §§216(b) and 217. The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the FLSA.

49.     This Court has supplemental jurisdiction over **ALMANZAR**'s state law claims pursuant to 28 U.S.C. § 1367.

50.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiffs resides in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since the action accrued in Collier County, which is within the Fort Myers Division.

---

[1]     **ALTA, DR. HOBAICA** and **BROWN** are referred to herein as "Defendants."

51.     **ALMANZAR** has worked for the Defendants within the last three years.

52.     **ALMANZAR** began his employment with the Defendants in November 14, 2014 as a physician's assistant (PA).

53.     **ALMANZAR** is not licensed to practice medicine in the State of Florida.

54.     The United States Department of Labor (DOL) has taken the unambiguous position that PAs do not qualify for the FLSA's professional exemption.

55.     Moreover, even if PAs would qualify for requisite duties of the professional exemption, PAs are not included in the salary-basis exemption found in CFR §541.304. The DOL has refused to extend §541.304's exception to the salary-basis requirement beyond actual physicians and has consistently taken the position that the salary-basis exception does not apply to PAs.

56.     A 1974 DOL opinion letter and 1994 Field Operations Handbook (which contains almost identical language to the opinion letter) state that PAs would need to be compensated on a salary basis to qualify for the professional exemption.

57.     Thus the Defendants must have paid **ALMANZAR** on a salary basis in order to be entitled to the professional exemption, but they failed to do so.

58.     **ALMANZAR's** direct supervisor was **HOBAICA** and **BROWN**, and **ALMANZAR's** role of physician's assistant was non-management and did not include advising the Defendants regarding violations of state or federal wage/hour law.

59.     **ALMANZAR's** job duties, in relevant part, included providing patients medical care from the Defendants' place of business.

12

60.     **ALMANZAR**'s regular daily duties included often began well prior to around 7:00 A.M. and could, and would, often end as late as 9:00 P.M. and frequently included work on weekends.

61.     The Defendants demanded that **ALMANZAR** be available between those hours and **ALMANZAR** did work for the Defendant during that time.

62.     The Defendants compensated **ALMANZAR** on strictly an hourly basis as is evidenced by his biweekly pay records, which reflect that **ALMANZAR** was not paid a fixed sum or fee. In other words, **ALMANZAR** only received pay for the hours he actually worked.

63.     Because the Defendants paid **ALMANZAR** on an hourly basis rather than on a salary basis, **ALMANZAR** was a non-exempt employee.

64.     **ALMANZAR** was required by the Defendant to work at least 45-hours per week for almost each week of his employment (except during scheduled vacations), but the Defendants failed to pay **ALMANZAR** overtime wages at time and a half.

65.     The Defendants instead paid **ALMANZAR** for his overtime at only straight time. In essence, the Defendant paid **ALMANZAR** only $70.00 per hour for overtime when it should have been paying him at the time and a half rate of $105.00 per hour.

66.     The Defendants' failure to pay overtime at time and a half is reflected on the pay records issued to **ALMANZAR**.

67.     **ALMANZAR** was not FLSA-exempt but rather a non-exempt employee whom the Defendants required or permitted to work overtime hours without proper compensation in violation of the FLSA because he performed overtime work for the benefit of the Defendants for which he was not properly compensated. This practice violates the overtime pay provisions of

13

the FLSA by virtue of the Defendants' failure to pay compensation at a rate of one and one-half (1 and 1/2) times the employee's regular hourly wage rate.

68.     The Defendants failed to act in good faith under the reasonable belief they had complied with the FLSA.

69.     **ALMANZAR** is entitled to liquidated damages because the Defendants acted willfully or with at least a reckless disregard as to the legality of its pay practices in regard to **ALMANZAR**.

70.     **ALMANZAR** demanded overtime wages on May 2, 2017 and was then terminated by the Defendants just 3-days later.

71.     Additionally, **ALTA** has failed to pay **ALMANZAR** per the terms of his employment contract.

72.     At all times, **ALTA** was obligated to pay **ALMANZAR** at the contracted $70.00 per hour rate.

73.     However, beginning in August 2015, **ALTA** began breaching that contract by unilaterally reducing his pay by $20.00 per hour.

74.     As such, **ALMANZAR** was underpaid by $20.00 per hour from August 2015 through May 2017. This has resulted in a loss of $3,600.00 per month for a total owing of $79,000.00 to **ALMANZAR**, which sum is in addition to the unpaid overtime identified above.

75.     Furthermore, the employment contract was for a fixed term of employment and failed to contain any language that would allow it to be terminated prior to the expiration of the term.

76.     On March 6, 2017, **ALTA** and **ALMANZAR** agreed to a twelve month term.

77.    **ALTA** terminated **ALMANZAR** on or about May 5, 2017 and thus **ALMANZAR** is owed ten months of pay. Based upon the contractually agreed rate of $70.00 per hour and **ALMANZAR**'s 45-hour workweek, **ALMANZAR** is owed $12,600.00 for each of the next 10 months, or a total of $126,000.00.

## COUNT I- DAMAGES & PENALTIES UNDER THE FCA

### (Defendants' Violation of 31 U.S.C. §3729(a)(1), as amended, 31 U.S.C. §3729(a)(1)(A)

78.    Relator incorporates by reference the allegations Paragraphs 1-42 as if fully set forth in this Count.

79.    From at least 2010 to present, the Defendants violated the FCA, 31 U.S.C. §3729(a)(1), and as amended, by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

80.    The claims were fraudulent because the Defendants made requests or demands for payment from the Program where **ALTA** represented to the Government that all services were performed by **DR. HOBAICA** when they were not. **ALTA** did this in order to receive about 20% more reimbursement in Program monies that it was not entitled to. All of these were fraudulent attestations by the Defendants in order to receive Program monies.

81.    The monies the Defendants obtained through its false or fraudulent submissions to the Program were provided in whole or in part by the United States.

82.    The United States and Florida were unaware of the falsity of the claims and/or statements which the Defendants submitted and/or caused to be submitted to the United States and in reliance on the accuracy thereof, paid the Defendants for reimbursement that otherwise would not have been paid and/or were ineligible for payment.

83.     The United States and Florida, being unaware of the falsity of the claims and/or statements caused to be made by the Defendants and in reliance on the accuracy thereof, paid and continues to pay the Defendants for Program monies that would otherwise not have been paid and/or were ineligible for payment.

84.     The Defendants' compliance with the Program, Medicare and state regulations was material to the United States' and Florida's decision to disburse funds to the Defendants.

85.     By reason of the Defendants' wrongful conduct, the United States has suffered and continues to suffer substantial damages.

WHEREFORE, the Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the United States:

    1)      Three times the amount of actual damages which the United States has sustained as a result of the Defendants' conduct;

    2)      A civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim which the Defendants caused to be submitted to the United States;

    3)      Prejudgment Interest;

    4)      All costs incurred in bringing this action.

To the Relator:

    1)  The maximum amount allowed pursuant to §3730(d) of the FCA and/or any other applicable provision of law;

    2)  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

3)  An award of reasonable attorney's fees and costs, and;

4)  Such further relief as this Court deems equitable and just.

## COUNT II- DAMAGES & PENALTIES UNDER THE FCA

**(Defendants' Violation of 31 U.S.C. §3729(a)(1), as amended, 31 U.S.C. §3729(a)(1)(B)**

86.     Relator incorporates by reference the allegations Paragraphs 1-42 as if fully set forth in this Count.

87.     From at least 2010 to present, the Defendants violated the FCA, 31 U.S.C. §3729(a)(1), and as amended, by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

88.     The claims were fraudulent because the Defendants made requests or demands for payment from the Program where **ALTA** represented to the Government that all services were performed by **DR. HOBAICA** when they were not. **ALTA** did this in order to receive about 20% more reimbursement in Program monies that it was not entitled to. All of these were fraudulent attestations by the Defendants in order to receive Program monies.

89.     The monies the Defendants obtained through its false or fraudulent submissions to the Program were provided in whole or in part by the United States.

90.     The United States and Florida were unaware of the falsity of the claims and/or statements which the Defendants submitted and/or caused to be submitted to the United States and in reliance on the accuracy thereof, paid the Defendants for reimbursement that otherwise would not have been paid and/or were ineligible for payment.

91.     The United States and Florida, being unaware of the falsity of the claims and/or statements caused to be made by the Defendants and in reliance on the accuracy thereof, paid

and continues to pay the Defendants for Program monies that would otherwise not have been paid and/or were ineligible for payment.

92.     The Defendants' compliance with the Program, Medicare and state regulations was material to the United States' and Florida's decision to disburse funds to the Defendants.

93.     By reason of the Defendants' wrongful conduct, the United States has suffered and continues to suffer substantial damages.

WHEREFORE, the Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the United States:

1) Three times the amount of actual damages which the United States has sustained as a result of the Defendants' conduct;

2) A civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim which the Defendants caused to be submitted to the United States;

3) Prejudgment Interest;

4) All costs incurred in bringing this action.

To the Relator:

1) The maximum amount allowed pursuant to §3730(d) of the FCA and/or any other applicable provision of law;

2) Reimbursement for reasonable expenses which Relators incurred in connection with this action;

3) An award of reasonable attorney's fees and costs, and;

4) Such further relief as this Court deems equitable and just.

## COUNT III- DEFENDANT'S VIOLATION OF THE FLORIDA FALSE CLAIMS ACT

94.     Relator incorporates by reference the allegations in Paragraphs 1-42 as if fully set forth in this paragraph.

95.     This is a *qui tam* action brought by the Relators on behalf of the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. §68.081 *et seq.*

96.     Fla. Stat. §68.082(2) provides liability for any person who:

(a)   Knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)   Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency.

97.     From at least 2010 to present, the Defendants violated the Florida FCA (FFCA) Fla. Stat. §68.082(2) by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information they conveyed, presented or caused to be presented false or fraudulent claims for payment or approval to the State of Florida.

98.     From at least 2010 to present, the Defendants violated the FFCA, Fla. Stat. §68.082(2)(b) by knowingly, in reckless disregard or deliberate ignorance of the truth or falsity of the information they conveyed, presented or caused to be made or used a false record or statement material to a false or fraudulent claim paid or approved by an agency.

99.     The claims were fraudulent because the Defendants made requests or demands for payment from the Program where **ALTA** represented to the Government that all services were performed by **DR. HOBAICA** when they were not. **ALTA** did this in order to receive about 20% more reimbursement in Program monies that it was not entitled to.  All of these were fraudulent attestations by the Defendants in order to receive Program monies.

100.    The monies the Defendants obtained through their false or fraudulent submissions to the Program were provided in whole or in part by the State of Florida.

101.    The State of Florida was unaware of the falsity of the claims and/or statements which the Defendants submitted and/or caused to be submitted to the United States and in reliance on the accuracy thereof, paid the Defendants for reimbursement that otherwise would not have been paid and/or were ineligible for payment.

102.    The State of Florida, being unaware of the falsity of the claims and/or statements caused to be made by the Defendants and in reliance on the accuracy thereof, paid and continues to pay the Defendants for Program monies that would otherwise not have been paid and/or were ineligible for payment.

103.    Compliance with applicable Medicare, Medicaid and the various other federal and states laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida by the Defendants. Compliance with applicable Florida statutes/regulations was also an express condition of payment of claims submitted to the State of Florida.

104.    Had the State of Florida known that the false representations were made by the Defendants, it would not have paid the claims.

105.    As a result of the Defendants' violations of Fla. Stat. §68.082(2), the State of Florida has been damaged.

106.    Relator has direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Fla. Stat. §68.083(2) on behalf of himself and the State of Florida.

WHEREFORE, the Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the United States:

1) Three times the amount of actual damages which the State of Florida has sustained as a result of the Defendants' conduct;

2) A civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim which the Defendants caused to be submitted to the State of Florida;

3) Prejudgment Interest;

4) All costs incurred in bringing this action.

To the Relator:

1) The maximum amount allowed pursuant to Fla. Stat. §68.085 and/or any other applicable provision of law;

2) Reimbursement for reasonable expenses which Relators incurred in connection with this action;

3) An award of reasonable attorney's fees and costs, and;

4) Such further relief as this Court deems equitable and just.


## COUNT IV: VIOLATION OF THE FLSA- UNPAID OVERTIME

107.    The Plaintiff hereby incorporates Paragraphs 43-69 in this Count as though fully set forth herein.

108.    **ALMANZAR** was a covered, non-exempt employee under the FLSA at all times during his employment as a physician's assistant with the Defendants.

21

109.    The Defendants were required by the FLSA to pay **ALMANZAR** at least time and one-half for all hours worked by **ALMANZAR** in excess of 40 hours per week.

110.    The Defendants had operational control over all aspects of **ALMANZAR**'s day-to-day functions during his employment, including compensation.

111.    The Defendants were **ALMANZAR**'s "employer" and is liable for violations of the FLSA in this case.

112.    The Defendants violated the FLSA by failing to pay **ALMANZAR** at least time and one-half for all hours worked over 40 per week.

113.    The Defendants have willfully violated the FLSA in refusing to pay **ALMANZAR** proper overtime for all hours worked over 40 per week.

114.    As a result of the foregoing, **ALMANZAR** has suffered damages of lost wages.

115.    The Defendants are the proximate cause of **ALMANZAR**'s damages.

**WHEREFORE,** the Plaintiff prays that this Honorable Court enter a Judgment in his favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## COUNT V – VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")- RETALIATION

116.    Plaintiff incorporates by reference Paragraphs 43-70 of this Complaint as though fully set forth below.

117.    The Defendants retaliated against **ALMANZAR** in direct response to **ALMANZAR** seeking enforcement and correction of the Defendants' refusal to pay proper wages in accordance with the FLSA.

118.   By **ALMANZAR** seeking enforcement and correction the Defendants' conduct that was in violation of the FLSA, **ALMANZAR** engaged in protected activity under 29 U.S.C. § 215(a).

119.   **ALMANZAR** was terminated from his employment with the Defendants as a result of having engaged in protected activity under the FLSA, to wit: seeking proper payment under the FLSA.

120.   **ALMANZAR** subsequently suffered an adverse employment action- his termination- that was causally and directly related to him having complained and objected to the Defendants about the Defendant's illegal wage practices.

**WHEREFORE,** Plaintiff prays that this Honorable Court enter a Judgment in his favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, punitive damages, the costs of litigation, interest, and reasonable attorneys' fees.

## COUNT VI – BREACH OF CONTRACT

121.   The Plaintiff realleges and incorporates Paragraphs 43-47, 49-52, and 71-77 in this Count by reference.

122.   A contract existed between **ALMANZAR** and the Defendants.

123.   The terms of the contract were that if **ALMANZAR** would be paid at the rate of at least $70.00 per hour and that he would be employed for a fixed term.

124.   Both **ALMANZAR** and the Defendants agreed to those terms, which were clear and unambiguous.

125.   **ALMANZAR** fully and satisfactorily performed his duties under the contract.

126.   The Defendants have breached the contract by refusing to pay **ALMANZAR** the full amount due under the terms of the contract.

127.   **ALMANZAR** has been damaged as a result of the Defendants' breach of the contract.

128.   This Count is timely brought and all conditions precedent have occurred or been waived.

**WHEREFORE,** Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees upon service of Offer of Judgment, and all other relief as this Court deems proper.

## COUNT VII – PROMISSORY ESTOPPEL

129.   The Plaintiff realleges and incorporates Paragraphs 43-47, 49-52 and 71-77 in this Count by reference.

130.   This Count is pled in the alternative.

131.   The Defendants represented that **ALMANZAR** would be paid at the rate of at least $70.00 per hour.

132.   The Defendants made a representation as to a material fact, to wit: if **ALMANZAR** would be paid at the rate of at least $70.00 per hour, which is contrary to the Defendants' now-asserted position.

133.   **ALMANZAR** reasonably but detrimentally relied upon the representation of the Defendants.

134.   The Defendants' change in position is detrimental to **ALMANZAR** as he reasonably relied upon the same in agreeing to perform services for the Defendants.

135.   Injustice can only be avoided by enforcing the promise against the Defendants.

136.   **ALMANZAR** has been damaged as a result of the Defendants' actions.

137.   This Count is timely brought and all conditions precedent have occurred or been waived.

**WHEREFORE,** Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees upon service of Offer of Judgment, and all other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **JOSE ALMANZAR,** by and through his undersigned attorney, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: July 21, 2017       **/s/ Benjamin H. Yormak**
                           Benjamin H. Yormak
                           Florida Bar Number 71272
                           Trial Counsel for Relator/Plaintiff
                           YORMAK EMPLOYMENT & DISABILITY LAW
                           9990 Coconut Road
                           Bonita Springs, Florida 34135
                           Telephone: (239) 985-9691
                           Fax: (239) 288-2534
                           Email: byormak@yormaklaw.com